JULIA LYNCH, Respondent, *against* PATRICK McNALLY, Appellant.

(Decided April 2d, 1877.)

An action for an injury inflicted by the bite of a vicious dog, which the owner, with a knowledge of its propensities, suffers to go at large, is not founded upon the ordinary liability for negligence; but upon the ground that to harbor such an animal and allow him to go freely about or in the public thoroughfare, shows such a disregard for the safety and lives of others as to partake of the character of a willful wrong, which, in itself, constitutes the cause of action for the injury inflicted by the animal.

In such an action, therefore, no such defense can arise to defeat the action, as contributory or co-operative negligence. Negligence on the part of the plaintiff, however, may be shown, but it goes only in mitigation of damages.

The liability of the owner or harborer of the dog rests upon his knowledge of the animal's dangerous propensities, and his allowing him to go at large where he may inflict injury.

The authorities in the case of injuries by ferocious animal reviewed.

Where the defendant on cross-examination elicited the same statement that the witness had made on the direct, and then moved to strike it out, which the court refused:—*Held*, that he was not injured; for if *his motion had been granted, it would not have shut out the evidence, as it was in on the direct, and it was then too late to strike it out in the direct.*

APPEAL by the defendant from a judgment entered in favor of the plaintiff upon a verdict rendered at a trial held before Judge VAN BRUNT and a jury.

The action was brought to recover damages for injuries to the person of plaintiff inflicted by the defendant's dog.

It appeared from the testimony that the plaintiff in passing the defendant's store in Grand street, in this city, about nine o'clock in the evening of March 1st, 1876, accompanied by some lady friends, offered a piece of candy to the defendant's dog, who was lying down or sitting in front of the defendant's store, and that the dog thereupon sprang at her and bit and lacerated her arm.

The plaintiff introduced evidence to the effect that the dog was of a vicious and mischievous disposition, accustomed to attack and bite mankind, and that the defendant had knowledge of it.

Evidence in contradiction of this was given by the defendant, as well as to the general good character of the dog.

Exceptions were taken to the refusal to strike out certain testimony stated in the opinion, and to the charge of the judge, that the doctrine of contributory negligence does not apply to accidents of this description, and only affects the amount of damage.

*Malcolm Campbell*, for appellant.

*Frank J. Dupignac*, for respondent.

CHARLES P. DALY, Chief Justice.—After an examination of the numerous decisions that have been cited in the argument, I am satisfied that a cause of action for an injury inflicted by the bite of a dog does not rest, as the defendant insists, upon the ordinary liability for injuries arising from negligence. Where an injury is inflicted willfully to the person, as in assault and battery, or to the character, as in libel or slander, there may be circumstances of great provocation, but they in no way affect the cause of action. They go in mitigation as affecting only the amount that ought to be given as damages. In such actions no such question can arise as to contributory or co-operative negligence; and it is the same in actions to recover damages for an injury arising from the bite of a dog. In cases simply of negligence, no action can be maintained, if the plaintiff, by his own negligence, materially contributed to the accident, as the law will not undertake to apportion the wrong. "In negligence," says Beardsley, J., "whatever may be its grade, there is no purpose to do a wrongful act, or to omit the performance of a duty; there is, however, an absence of proper attention, care or skill. It is strictly nonfeasance, not malfeasance." (*Gardner* v. *Heartt*, 3 Den. 237.) An action to recover damages for an injury received by the bite of a dog, is an action, however, of a very different character. It is maintainable only when it appears that the defendant harbored or kept the dog that inflicted the injury, after he knew of its vicious propensities, and that it was accustomed to bite human beings or other animals. If a man who keeps or harbors such a dog does not muzzle him, or chain him up, or where the propensity is undoubted, shoot him ; but suffers him to go at large about his premises, or in the public thoroughfare, where he is liable at any moment, upon provocation, or without it, to bite passers by, and may, as often happens, inflict a wound with his teeth that will give rise to one of the most dreadful of human diseases—hydrophobia—it shows upon the part of the person keeping a vicious animal of this description such an utter disregard of human safety and of human life that it may be said to partake of the character of a willful wrong, which, in

itself, constitutes the cause of action, if an injury has been inflicted by the dog. It is analogous to those cases or actions in which it has been held that where the negligence of the defendant has been so wanton and gross as to be evidence of voluntary injury, the plaintiff may recover, in trespass, although there has been negligence on his part. (*Wynn* v. *Allard*, 5 W. & S. 524; *Munroe* v. *Leach*, 7 Met. 274; *Farwell* v. *Boston, &c. R. R. Co.* 4 id. 49). Negligence, want of care, or circumstances of provocation on the part of the plaintiff go in mitigation, but do not affect the cause of action, which is made out when it is shown that the defendant kept the dog, and, with a knowledge of his vicious propensity, suffered him to go about and inflict the injury. A man has a right to keep a fierce dog upon his premises for the protection of his property. (*Sarch* v. *Blackburn*, 4 Carr. & P. 297.) And if he is kept during the day securely by a chain, and persons are admonished by a notice put up in the vicinity of where he is, to beware of him; and a person unheeding the admonition, imprudently approaches the dog and is bitten, he has no cause of action; not upon the ground that his own negligence has contributed or co-operated to produce the accident, but because the owner of the dog has done nothing that should make him responsible for the act, he having adopted all precautionary measures to prevent any injury arising from the known disposition and habits of the animal. "If," says Tenterden, Ch. J., in the case last cited, "a man puts a dog in a garden walled all around, and the wrong-doer goes into the garden and is bitten, he cannot complain in a court of justice of that which is brought upon him by his own act."

In *Brock* v. *Copeland* (1 Esp. N. P. 203), the defendant, who was a carpenter, kept a dog for the protection of his yard; the dog was tied up all day and was at that time very quiet and gentle, but was let loose at night. The defendant's foreman went into the yard, after it had been shut up for the night, and was bitten and torn by the dog. Lord Kenyon held that the action would not lie. He said that every man had a right to keep a dog for the protection of his yard or

house ; that the injury which this action was calculated to redress, was where an animal, known to be mischievous, was permitted to go at large, and the injury, therefore, arose from the fault of the owner in not securing such animal, so as not to endanger or injure the public ; that in the case before him the dog had been properly let loose, and the injury had arisen through the plaintiff's own fault, in incautiously going into the defendant's yard after it had been shut up, and he granted the motion for a non-suit ;—a case that pertinently indicates the nature of this action and the ground upon which it rests, to-wit, that the cause of action is founded upon the owner or harborer of a vicious dog allowing him, with a knowledge of his propensity, to go freely about, and that he has inflicted injury (*Charlwood* v. *Greig*, 3 C. & K. 48 ; *Worth* v. *Gilling*, L. R. 2 C. P. 1), and that it is not essential, in such an action, as it is in ordinary actions for negligence, for the plaintiff to show affirmatively that he exercised due care ; that the accident occurred without any fault on his part, but solely through the negligence of the defendant. This fully appears from what was held in one of the earliest cases on this subject (*Smith* v. *Pelah*, 2 Stra. Rep. 1264), in which Lee, Ch. J., said, that the *scienter* is the gist of the action. In the language of the report, he ruled, " that if a dog has once bit a man, and the owner, having notice thereof, keeps the dog, and lets him go about or lie at his door, an action will lie against him at the suit of a person who is bit, though it happened by such person's treading on the dog's toes ; for it was owing to his not hanging the dog on the first notice, and the safety of the king's subjects ought not afterwards to be endangered." This is conformable to what was said in an earlier case (*Jenkins* v. *Turner*, 1 Ld. Ray. 109), in which Powell, J., held, that if a man keeps a dog which is accustomed to bite sheep, and the owner knows it, and notwithstanding keeps the dog, and he afterwards bites a horse, it is actionable, because the owner, after notice of the first mischief, ought to have destroyed it or prevented it from doing any more hurt. In *May* v. *Burdett* (9 Ad. & E., N. S. 101) the objection was taken that the

declaration was defective for not alleging *negligence*, or some default of the defendant, in not properly or securely keeping the animal.   The question was elaborately argued, and after an exhaustive examination of precedents,—ancient and modern—the conclusion of the court was, that the declaration was good without any such averment.   The conclusion, Lord Denman said, to be arrived at from a consideration of the cases was, that whoever keeps an animal accustomed to attack and bite mankind, with knowledge that he is so accustomed, is *prima facie* liable on an action in the case at the suit of any person attacked and injured by the animal, without any averment of negligence on the part of the defendant ; that the gist of the action is the *keeping* the animal after *knowledge* of its mischievous propensities.   He said that the precedents, both ancient and modern, with scarcely an exception, merely state the ferocity of the animal and the knowledge of the defendant, without any allegation of negligence or want of care.   He referred to two early cases in the Register where the cause of action stated in both precedents was simply the propensity of the animals, the knowledge of the defendant and the injury to the plaintiff, and that there was no allegation of negligence or want of care.   He finally said that the conclusion to be arrived at from the examination of all the authorities was, that a person keeping a mischievous animal, with knowledge of its propensities, is bound to keep it secure at his peril, and says that the case of *Smith* v. *Pelah*, above referred to in Strange, puts the liability upon the true ground.   That if the injury was solely occasioned by the willfulness of the plaintiff, after warning, that it might be a ground of defense, by a plea in *confession* and *avoidance ;* but that it was unnecessary to give any opinion upon that point.   In *Card* v. *Case* (5 Man. Gr. & Sc. 622) the preceding case was approved, and it was held that in an action of this description, the plea of not guilty puts in issue only the ferocity of the dog and the *scienter*, these matters forming the substance of the charge or ground of action.   In that case, it was averred that it was the duty of the defendant to use due and reasonable care and precaution in and about the

keeping and management of the dog, and that he neglected to do so. ·This averment in the declaration the court held was idle and superfluous; that no issue could be taken upon it; that the assertion of the defendant's keeping the animal negligently was not essential; but that the gravamen of the action is the keeping of a ferocious animal, knowing its propensities, and the consequent injury to the plaintiff.

These last three cases are cited and approved in the opinion of the Court of Appeals in *Kelly* v. *Tilton* (2 Abb. Ct. App. Cas. 499) as authoritative expositions of the law, and the previous decision of the Supreme Court, in *Loomis Terry* (17 Wend. 496) was substantially to the same effect; that if the defendant knowingly and wrongly suffers a vicious and ferocious dog, by whom the injury is inflicted, to go freely about his grounds, it is actionable, though there may have been negligence on the part of the plaintiff. In that case the defendant, after knowledge of the fact that his hound had attacked a man on horseback, caught him by the foot, and left the print of his teeth in the man's boot, allowed the animal to go freely over his grounds in the daytime. The action was brought to recover damages for an injury received by the plaintiff's son, who went into the defendant's woods to hunt for wild animals, where the defendant's hound sprang upon him, and the hound being joined by a slut of the defendant's, the boy was severely bitten. Although it was conceded that the plaintiff's son was a trespasser in going upon the defendant's premises, and it was also shown, in addition, that he had been cautioned not to go where the slut and her puppies were, as the slut was cross and might bite him, the puppies being in a hollow log in the woods, about twenty-five rods from the place where the boy was attacked; yet the court sustained the judgment for the plaintiff upon the ground that it was a wrongful act for the defendant to allow such an animal to go at large over his premises in the daytime; that it was an act involving human safety and perhaps human life; that he was not justified, even as against trespassers, in allowing such a fierce dog to go without putting up a warning or notice, and the court,

in their opinion, dwell especially upon the fact that he made no effort to restrain the animal from attacking his neighbor, but, on the contrary, when he heard of the injury to the boy, expressed his regret that the dogs had not eaten him up. In *Jones* v. *Perry* (Peake's Evidence, 355, Am. Ed., 2 Esp. R. 482) the dog was tied up in the defendant's cellar, but the rope or chain was of such length that it suffered him to go as far as the curbstone on the opposite side of the street. He broke through a wicker gate into the street, when a child coming up to him irritated him with a stick, upon which he flew at the child, bit him, and the child afterward died of hydrophobia. It appeared that there was a report in the neighborhood that the animal had been previously bit by a mad dog, but there was no evidence that the defendant knew it, or knew the animal was vicious; but, on the contrary, the evidence was that the dog, until a very short time before the accident, went in common about the streets and was very good tempered and tractable. But Lord Kenyon said that the defendant showed a knowledge that the animal was fierce, unruly, and not safe to be permitted to go abroad by the precaution that he took to tie him; that what he had done had not been sufficient, and through his not securing the animal properly the injury had happened. He accordingly held, that the plaintiff was entitled to recover. Here it was shown not only that the dog had been irritated by the child with a stick, but the circumstance relied upon to show that the defendant knew that the dog was dangerous was a very slight one. The decision, however, was by a very eminent judge, and the case was cited and relied upon by the Supreme Court, in *Loomis* v. *Terry* (*supra*), in support of the conclusion there arrived at. In many of the cases where the question arose whether the action could be maintained, the court certainly treated it as if it depended upon whether the injury arose through the plaintiff's or the defendant's negligence, and in some of them, it is said, that if there was negligence on the part of the plaintiff, he could not recover (*Earhart* v. *Youngblood*, 27 Pa. St. 331), or if by common care, the dog might have been avoided. (*Curtis* v. *Mills*, 5 Car.

& Pay. 489 ; *Munn* v. *Rede*, 4 Allen, 431 ; *Coggswell* v. *Baldwin*, 15 Verm. 404.) And in some of the cases like *Loeb* v. *Link* (4 E. D. Smith, 63), there was no cause of action, the defendant having done all that he could be required to do in keeping the dog securely. The observations, however, were loosely made, without that careful investigation into the nature of the action which was had in the other cases referred to. It is very clear, upon a review of all the cases, that as respects the cause of action, it does not depend either upon the plaintiff or the defendant's negligence, but upon the fact that the defendant, with a knowledge of the vicious propensities of the animal which he kept or harbored, suffered it to go at large, and that it inflicted the injury for which the action is brought. The ruling of the judge, therefore, upon the trial was correct, that contributory negligence in no way affected the cause of action, but was only for the consideration of the jury in determining the damages to be awarded to the plaintiff.

The plaintiff testified upon the direct, without objection, that she had expended $20 for medicine and besides that had to borrow $20. The defendant, in cross-examining her, returned to the subject of the $20, and having elicited substantially the same statement as she had made upon the direct, moved to strike out that part of the testimony, which motion was denied. If he desired to strike out the answers to her questions upon the cross-examination, the granting of his motion would not have shut out this testimony, as it was already in on the direct, and if he desired to reach the testimony upon the direct, his motion was too late, as he should either have objected to the questions which brought out this testimony on the direct, or if it was not responsive to the questions put, he should have moved at the time to strike it out. In addition to which I do not see how it could have the effect of allowing the jury to charge the amount twice, as the defendant claims. It was, in effect, testifying that she had expended $20 for medicine, and had to borrow the money. This is what I understand her statement to have been, taking her direct and cross-examination together ; or that having ex-

Lynch v. McNally.

pended $20 for medicine, she had, in addition, to borrow $20 more for the further purchase of medicine and for her support; but if there is any doubt on this point, it constitutes no ground for granting a new trial, as the plaintiff can remit that amount from the damages recovered, with the consent of the court. There is no ground whatever for granting a new trial upon the assumption that the verdict is unsupported by evidence, or is against the weight of evidence, as respects the vicious character of the dog, and the defendant's knowledge of his propensities before the plaintiff was bitten by him. The testimony was conflicting upon this point; but we must assume, in support of the verdict, that the jury believed the plaintiff's witnesses and disbelieved those of the defendant. The plaintiff's witnesses testified not only that the dog had previously bitten three persons in the street, before he bit the plaintiff, and that the defendant not only had a knowledge of these facts, but that he was remonstrated with by two policemen, and without effect ; that he was told by one of the policemen two weeks before the plaintiff was bitten, that he ought to keep the dog down stairs, or muzzled and tied up ; that he spoke to him two or three times about the animal; that he told him every time he spoke to him about the dog's growling at persons when they were passing by ; that he was a vicious dog, and he ought to keep him within, or, as the witness expressed it, below. This policeman had known the dog for a year. He swore that he saw him frequently in front of the store, and that upon one occasion the dog growled and ran at him, and that he had to give him a wide berth by going over to the other side of the street.

The other policeman testified that he knew that the dog was not safe to let loose in the streets ; that on two occasions before the biting of the plaintiff, he notified the defendant that the dog had bitten two persons; that upon one occasion he saw him bite a man—a rag-picker—catching him by the pantaloons, and tearing them down about the man's leg. That this policeman then told the defendant that if he caught the dog on the street again he would kill him ; and the defendant's response was that the dog would not hurt

anybody, that he was only playful; that he told the defendant that he had better tie him up, and he took him in the back part of the store; but the week after that he caught another man; that the defendant then locked him up in the store, but he was out a number of times. The witness again saw the dog catch a man by the coat-tail, and tear his coat; that he reported this occurrence to the defendant, and asked to have the dog killed, and the defendant's reply was that the dog would not hurt anybody, and that he would not take $100 for him; to which the policeman answered, "You had better take care of him, or he will get you in trouble." It further appeared that the animal bit a boy who was picking pins in the street; a fact of which the defendant was informed at the time. The boy was in the street between the car-track and the gutter, when the animal sprang at him and bit him, the teeth entering the boy's flesh. This was ample and most conclusive evidence, both of the vicious character of the dog and the defendant's knowledge of his disposition. The defendant denied, and testified, to express it in his own language: "He was just as gentle as a little baby that would be on its mother's breast." The jury evidently did not believe him, but believed the witnesses for the plaintiff, and that is a conclusion and finding which cannot be reviewed here. The judgment should be affirmed with costs.

VAN HOESEN and JOSEPH F. DALY, JJ., concurred.

Judgment affirmed, with costs.*

---

\* This decision was affirmed by the Court of Appeals, April 16th, 1878.